# No. 15,097.
## ALLISON *v.* THE PEOPLE.
### (125 P. [2d] 146)

Decided April 6, 1942. Rehearing denied April 27, 1942.

296

Mr. WILLIAM A. BLACK, Mr. DON D. BOWMAN, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

PLAINTIFF in error, Fay L. Allison, to whom we hereinafter refer as defendant, was charged in two counts of an information with larcency from the person and simple larceny, in feloniously taking $10 in cash and one diamond ring valued at $500, all of which was the property of the complaining witness, Margaret N. Dodge. Defendant entered a plea of not guilty, and upon trial

the jury returned a verdict of guilty of simple larceny —the second count. On this verdict the court imposed a penitentiary sentence upon defendant, and she seeks a reversal of the judgment on writ of error. We elect to dispose of the case on her application for supersedeas.

Defendant's main contention for reversal is based upon the denial by the court of a motion for a directed verdict, upon the ground that "the people failed to connect the defendant in any way with the commission of the crime charged in the information or any other crime."

The evidence upon which conviction was obtained is wholly circumstantial. No one saw defendant take the ring or money, neither of which ever was recovered. The evidence against defendant being circumstantial, the court instructed the jury in part as follows: "Where a conviction is sought on circumstantial evidence alone, as in this case, the people must not only show beyond a reasonable doubt that the alleged facts and circumstances are true, but the facts and circumstances must be such as are absolutely incompatible, upon any reasonable hypothesis, with the innocence of the defendant, and incapable of explanation upon any reasonable hypothesis other than that of the guilt of the defendant." The jury, by its verdict, must have found that the evidence upon which it was based was "absolutely incompatible, upon any reasonable hypothesis, with the innocense of the defendant." Even though the jury so found, in view of the asserted error, it is our duty carefully to search the evidence in order to determine whether this verdict was sustained thereby.

The record discloses the following facts and circumstances: On the evening of July 6, 1941, at the Broadmoor Hotel, Colorado Springs, Colorado, Mrs. Dodge for the first time met defendant, who was sitting in the rear seat of the former's automobile, where she, at her own solicitation, was invited by friends of Mrs. Dodge, to whom she also was a stranger, on the plea of obtain-

ing transportation to Denver. After Mrs. Dodge granted permission to defendant, for the transportation sought by her, she requested that a stop be made at the Joyce Hotel, where she was registered, so that she might obtain her luggage. When Mrs. Dodge reached said hotel she and her friends, composed of Mr. and Mrs. Claycomb, and a Mr. Sneed, who is connected with the United States military service, were invited by defendant to her room, for a cocktail. While there defendant made a long-distance telephone call, purportedly to her husband, but, in fact, to one Stovell at Dallas, Texas. At that time and place each member of the party had one drink of whiskey, and after a lapse of approximately fifty minutes they left Colorado Springs at ten o'clock p.m. and proceeded to Denver, arriving there at approximately one o'clock in the morning, driving directly to the home of Mrs. Dodge, at which point the Claycombs transferred their luggage to their own car and departed. Mrs. Dodge, Sneed and defendant then proceeded to a night club on Broadway, ostensibly to get something to eat, but, instead, Mrs. Dodge had one and defendant and Sneed each had two drinks of liquor. At that time defendant stated that she was stopping, or intended to stop, at the Argonaut Hotel. At about two o'clock a.m. they left the night club to take defendant to this hotel. Upon their arrival, Mrs. Dodge remembered that a friend of hers was residing at the hotel, and after locating him, all three went to his room, and after partaking of more liquor, Mrs. Dodge taking but one drink, and, owing to the lateness of the hour, at the latter's suggestion they decided to leave for home at about 3:20 o'clock a.m. Before departing Mrs. Dodge asked defendant if she was stopping at the Argonaut, to which defendant replied that she did not care to stop at that hotel. At her suggestion that they go to a place on the North Side about which she had heard, for an Italian dinner, the party proceeded to that locality, Sneed driving, but after some time, defendant, while

insisting that they find the place, failed to locate it, and finally the party partook of sandwiches and coffee at a little "pick-a-rib" place, from which they went directly to the Cory Hotel, where defendant had decided to stop, reaching there at 5.57 o'clock a.m.. When they arrived in front of the hotel defendant, remarking that Mrs. Dodge and Sneed had been very nice to her, invited them to come up and have an "eye-opener." at that time, without the knowledge of Mrs. Dodge, she registered under the name of "Mrs. F. A. Arler" of Colorado Springs. Mrs. Dodge and Sneed accepted defendant's invitation, but when they reached her room, she said that she was sorry, but she did not have anything, and gave Sneed some money requesting him to go out and purchase some liquor. He went out, but returned shortly, stating that he had been unsuccessful, and had asked a taxi driver to procure and bring them some. While Sneed was absent defendant unpacked her bags, slipped off her shoes, hung her clothes in the closet, and was asked by Mrs. Dodge how long she intended to stay, to which she replied, "four or five days," that she was expecting her husband. Soon thereafter the taxicab driver came with the liquor and handed it to defendant, who paid him for it. She took the bottle into the bath room, closing the door sufficiently so that neither Mrs. Dodge nor Sneed could see her pour the liquor. When she returned, and while serving drinks, the following conversation occurred between Mrs. Dodge and defendant:

Mrs. Dodge: "You say you will be here four or five days?"

The Defendant: "Yes."

Mrs. Dodge: "You are meeting your husband?"

The Defendant: "Yes."

Mrs. Dodge: "Isn't that nice. Is this your first marriage?"

The Defendant: "No, no. I have been married four times."

Mrs. Dodge: "That is quite a few." (Looking at the ring on her left finger): "This was my first marriage."

The Defendant: "It isn't a bad rock."

That was the last Mrs. Dodge remembered. She had sipped only a part of the liquor, which was the first served since they left the Argonaut at 3:20 a.m. Both Mrs. Dodge and Sneed "passed out." As Mrs. Dodge expressed it, "just like I was shot." At approximately 6:45 a.m. defendant packed her luggage and checked out, paying for the time that she had occupied the room, in which she left Mrs. Dodge and Sneed in their unconscious condition. At approximately 7:45 a.m. Mrs. Dodge regained consciousness, and after noticing that her ring and money were missing, she, with some difficulty, aroused Sneed, who was slumped in a chair near the window. Her empty purse was lying on the floor, and, after learning that defendant had checked out, they immediately reported the matter to the police at headquarters, where they were interviewed by Sergeant Lawrence Cook. Cook checked the telephone call defendant had made from the Joyce Hotel to Dallas, and learned that it was to a man by the name of Stovell, and through this party he obtained a photograph of defendant, which he forwarded to the F.B.I., and with the assistance of this agency he subsequently succeeded in locating defendant in Chicago about two months later. She refused to return to Denver, and was extradited. On her way to Denver she told the officer who had her in charge that she left the party at the Cory Hotel shortly after she registered, because she became sick; that she had a round-trip ticket to Dallas, Texas, and also a ticket from there to Chicago, Illinois, and that she left Denver by train about 8:30 a.m. the same day for Dallas; that she stopped only between trains; that she went from Dallas to Chicago, and had been there and in that vicinity ever since. When asked by the officer whether she took the ring, she said: "You know

from my record I never take any jewelry, it has always been money."

██ Defendant did not testify at the trial. This fact, as the court instructed the jury, cannot be considered as any evidence of her guilt or innocence. '35 C.S.A., c. 48, §488. However, defendant, because of her failure to testify, will not be heard on review to complain that the jurors drew inferences against her which were warranted by the evidence. *O'Loughlin v. People,* 90 Colo. 368, 10 P. (2d) 543. Moreover, under the circumstances, the jury could draw any reasonable inference of guilt from the whole evidence. *Blanda v. People,* 67 Colo. 541, 189 Pac. 249.

██ Does the record here reviewed, notwithstanding the verdict of the jury to the contrary, leave standing some reasonable hypothesis of innocence? If it does, as a matter of law, a conviction upon evidence which is wholly circumstantial should not be permitted to stand. The verdict of the jury, in view of the instructions above mentioned, is an element to be considered, but it is not controlling. The jury, of course, had the advantage of considering all of the human equations of the witnesses, which we do not have.

The only reason given to the police officer why defendant suddenly left the Cory Hotel that morning was because she was ill. Is that a reasonable hypothesis in favor of defendant? We think not. It does not, under the disclosed facts and circumstances, seem reasonable that a sick person would leave a hotel room in less than an hour after checking in and begin a railroad journey of more than a thousand miles. If she in fact was ill, the natural course to follow would be to remain in her room or go somewhere to receive care or medical attention. She did neither. She registered under an assumed name, and after dispensing liquor, with the result above mentioned, she left for parts unknown to those left behind, although when checking in less than an hour prior thereto she unpacked all her clothes and

hung them in a closet, saying that she was going to stay at the hotel four or five days. Her excuse for leaving was not based upon a reasonable hypothesis.

Counsel for defendant suggest, as a reasonable hypothesis of innocence, that the facts imposing guilt were no stronger against defendant than they were against Sneed, who was not even searched. What are the facts concerning Sneed's participation, in addition to those already mentioned? He was the last to recover from the stupor and immediately reported the loss of the stolen property to the police, and thereby submitted himself for investigation. He appeared and testified at the trial and was subjected to severe cross-examination. It is a reasonable inference from the evidence that defendant, a total stranger, ingratiated herself with the party and made most of the suggestions as to the drinking of liquor, things which Sneed did not do. Defendant, not Sneed, instigated the Cory Hotel episode. The evidence as to Sneed and defendant, as related to the offense charged, is not comparable.

Defendant's counsel also, in support of their contention that the evidence was insufficient to support a conviction, cite a number of cases, on two of which they primarily rely. The facts in both are readily distinguishable from those in the instant case. In *People v. Lesser,* 27 N.Y.S. 750, where there was a conviction based solely upon the uncorroborated testimony of the complaining witness, the defendant entered the apartment of the former at her invitation, and, when departing, left his address. He was arrested two days later. He testified at the trial and denied taking the watch, the subject of the larceny, or that he ever had seen it lying on the mantelpiece. He produced two witnesses who testified as to his honesty and good character. No flight was involved. At the time the watch was taken he was engaged in earning an honest livelihood, and his evidence was supported by those who had employed him for a long period of time. In the instant case the invitation to the hotel

room was by defendant, who disappeared, leaving no address. In *Hamilton v. State,* 142 Ind. 276, 41 N.E. 588, the felonious taking occurred in a saloon, where the complaining witness Miller and a number of tramps drank frequently and played cards together from 9 a.m. until noon. While standing at the bar, taking the last drink, the defendant pressed against Miller and another person, at which time it was alleged he took a purse containing about $17 from Miller's hip pocket. The defendant had an opportunity to know where the money was located. It was not clear from the evidence that it was necessary that he press against Miller so that he might reach the bar, but at that point he secured his glass and took a drink. During this time several others were crowding Miller. Thereafter the tramps left for a point six miles distant. Some two or three minutes after their departure Miller went to an outhouse and discovered that his purse and money were missing. Returning to the saloon, a posse was organized, the tramps soon were overtaken, and a number of shots were fired, ranging from fifty to four hundred, whether by the posse only, or by the posse and the tramps, is not clear. During this shooting defendant attempted to scale a fence and escape, but was unsuccessful, and he, together with six comrades, was arrested. No purse or money was found. The appellate court held that this evidence did not exclude every hypothesis of innocence.

In the instant case the facts are entirely different, and we are unable therefrom to say that they show any *reasonable* hypothesis of innocence and conclude, therefore, that the facts were sufficient to warrant the verdict returned by the jury.

 It is further contended by defendant that the verdict of guilty on the second count, which charges simple larceny, is contrary to the evidence, for the reason that if larceny was committed, it was from the person, which was the offense charged in the first count, and on which the jury returned no verdict. Both counts

were based upon the same transaction. The argument seems to be that because the jury failed to find defendant guilty of larceny from the person, that this was equivalent to acquittal of simple larceny. This contention is without merit. The evidence was sufficient to sustain either count, and the fact that the jury failed to return a verdict on the first count was in no way prejudicial to defendant. The granting or denying of the motion of defendant to require the people to elect upon which count they would proceed was, under the circumstances disclosed by the record, discretionary with the court, and the denial thereof was not error.

■■ Counsel for defendant assign error on the admission of certain evidence, some of which was hearsay. From a careful consideration of the record, it is our opinion that error, if any, resulting from the admission of hearsay testimony was harmless and not prejudicial to the rights of defendant. A more serious question is the assertion by counsel that the admission of evidence concerning defendant's character, when no such issue was presented — defendant not testifying — constituted error. The admission of the evidence of which complaint is made was relevant for the purpose of bringing before the jury the question of flight by defendant immediately after the Cory Hotel episode. To prove flight, and to anticipate any answer of defendant on that issue, it not being known what, if any, evidence she would produce in opposition to that offered by the people, it was necessary to show the whereabouts of defendant after July 7, 1941. These whereabouts, and her apprehension, were detailed by Sergeant Cook, in charge of the investigation of the case, and he testified as to what he did in locating her, where and how he found her, and that she refused voluntarily to return to this jurisdiction. Where flight is involved, it is "relevant to show the steps taken by officers and others to locate and apprehend accused." 22 C.J.S., p. 959, §625. Cook's testimony concerning the different steps taken in the investigation included an

inquiry of the Federal Bureau of Investigation at Washington, D. C., and in the development of this evidence he testified as follows:

"Q. What else did you do, in your investigation in this case? A. I wired the F.B.I. at Washington, D. C. to see if they had a record of a party by that name.

"Q. What name did you know? A. Fay L. Allison.

"Q. As a result of that particular investigation, what did you do? A. I immediately placed a pick-up in thirty-one different states in the United States for this woman, giving a description, and certain numbers and records.

"Q. All right, what was the result of that? A. She was arrested in Chicago, Illinois, on the 17th of August, 1941."

The admission of this evidence, particularly of the phrase "and certain numbers and records," is urged as constituting prejudicial error. We are not impressed with that view, but conceding that it may be more important than we believe, we observe that no objections whatever were interposed at that time to the testimony, nor was any objection directed particularly to this phrase. If counsel for defendant had at that time called the court's attention to the questioned language by proper objections, the court, in all probability, would have ordered it stricken and instructed the jury to disregard it. At the conclusion of the people's case, and argument on the denial of a motion for a directed verdict, the following colloquy took place between counsel for defendant and the court:

"Mr. Bowman: I want to be sure I excepted and objected to the testimony of Detective Cook, now in the records that he checked with the F.B.I.

"The Court: If you haven't, you can have it."

This amounted to no more than a general objection to all of the testimony relative to the F.B.I., and by it counsel failed to call the trial court's attention to the phrase of which complaint is made. Under these cir-

cumstances we decline to pass upon this alleged error as not being properly and sufficiently raised and presented for our consideration.

Prejudicial error also is urged with reference to the following testimony given by Sergeant Cook:

"Q. Did you have any conversation with this defendant with respect to this case filed in Colorado? A. I did.

"Q. With respect to the loss of this diamond ring of Mrs. Dodge's? A. I did.

"Q. Was that in Chicago? A. It was on the train on the way back, and also in my office in Denver.

"Q. Will you state what that conversation consisted of? A. I asked her what she did with the diamond ring she took from Mrs. Dodge. She told me at that time she didn't take that ring.

"Mr. Bowman: Didn't what?

"Witness: She didn't take the ring; she said 'you know from my record I never take any jewelry, it has always been money.'"

The trial court, after objections and argument, permitted the testimony to stand. In our opinion, this ruling was not error. Defendant, in a conversation relating to the offense charged, was making an explanation of why she did not steal the ring. It also must be remembered that there was money, in the amount of ten dollars, involved in the larceny charge. Considered in connection with this fact, the evidence clearly was admissible.

In view of our conclusions, we deem it unnecessary to touch upon other questions raised and discussed in the briefs.

The judgment is affirmed.

Mr. Justice Burke concurs in the affirmance.

Mr. Justice Hilliard not participating.