## No. 19,350.

EDWARD GONZALES *v.* PEOPLE OF THE STATE OF COLORADO.

(361 P. [2d] 358)

Decided April 24, 1961.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE HALL delivered the opinion of the Court.

GONZALES and two others, Martinez and Arellano, were charged in a three count information with (1) entering a motor vehicle with intent to commit larceny; (2) larceny of a motor vehicle, and (3) conspiracy to commit breaking and entering a motor vehicle and larceny of a motor vehicle.

On trial to a jury the people established the fact that one Galusha, the owner of a 1958 Pontiac automobile, had, at about 11:30 P.M. on December 13, 1958, parked said Pontiac adjacent to the Starlite Club in Pueblo, Colorado, where he was a patron. The car was locked.

At about 1:30 A.M., December 14, 1958, a state patrol officer discovered this Pontiac being pushed by a 1951 Oldsmobile at the intersection of Aspen and Liberty Streets about four blocks from the Starlite Club. As he approached the cars the Pontiac stopped and two persons jumped out and ran. One of them, the defendant Martinez, jumped from the right side and was captured by the patrol officer. The Oldsmobile made a U-turn and was later found abandoned several blocks from the Starlite Club.

There is no evidence as to how many persons were in the Oldsmobile or who they might be. There was proof that Gonzales, on the evening of the 13th, had borrowed the Oldsmobile from his uncle, with whom he made his home, and that at about 1:55 A.M., on the morning of the 14th, Gonzales reported to the Pueblo Police Department that the 1951 Oldsmobile had been stolen from in front

of Murphy's bar, where he stated he had parked it at about midnight.

The foregoing is in substance the evidence offered in behalf of the people.

Each defendant at the close of the people's evidence moved for directed verdicts of not guilty, whereupon the trial judge stated:

"The Court is going to reserve its right to rule on this motion until the completion of the case."

Martinez testified in his own behalf. Nothing that he said implicated Gonzales or Arellano in any manner. Neither Arellano nor Gonzales took the witness stand.

Gonzales produced four alibi witnesses who testified that during the time of the events in question Gonzales was enjoying the hospitality afforded by various and sundry bars, taverns, ballrooms and plain "joints."

At the close of the testimony the court sustained the motions for directed verdicts on the third count of the information and denied the motions for directed verdicts on the first and second counts as to all three defendants. All were found guilty on counts (1) and (2). Gonzales was sentenced to the state penitentiary for a term of three to ten years on each count, the sentences to run concurrently.

Gonzales is here, pro se, by writ of error seeking reversal, and urges as grounds therefor that the motion for a directed verdict of not guilty should have been sustained.

With this contention we agree. There is no direct testimony that Gonzales was in either car at the time of the arrival of the patrolman on the scene. The patrolman stated that he had no idea as to how many, much less who, were in the Oldsmobile. There is no direct testimony that Gonzales was even in the general area of the larceny of the Pontiac.

The only circumstances which point to Gonzales' guilt is the fact that some four hours before the larceny he had borrowed his uncle's car and that car was being used

to push the stolen Pontiac. The patrol officers, and the police officers to whom Gonzales reported that the Oldsmobile had been stolen, pointed out discrepancies in statements of Gonzales as to just where his car was parked when stolen and whether he had walked or ridden from Murphy's bar to the Chief bar.

■ These circumstances amount to nothing more than a succession of inferences based on a nebulous foundation and are not such as to establish the guilt of the defendant beyond a reasonable doubt, nor to exclude every reasonable hypothesis of his innocence. *Allison v. People,* 109 Colo. 295, 125 P. (2d) 146.

■ Proof of the fact that Gonzales took possession of the Oldsmobile at 8:30 P.M., December 13, 1958, is not proof beyond a reasonable doubt that he was driving the automobile at 1:20 A.M., December 14, 1958.

The motion for a directed verdict on the part of Gonzales should have been sustained.

The judgment is reversed and remanded with directions to vacate the judgment and sentence and to discharge the defendant.