The **CHARLESTON NATIONAL BANK,** **as Administrator of the Estate of Jennings Everett Samples, Deceased, Appellant,**

v.

**William M. HENNESSY et al., Appellees.**
**No. 25673.**

United States Court of Appeals
Fifth Circuit.

Nov. 27, 1968.

---

Jeanne Heyward, Charles K. George, Dean, Adams, George & Wood, Miami, Fla., for appellant.

William S. Frates, Larry S. Stewart, L. Edward McClellan, Jr., Miami, Fla., for appellees.

Before WISDOM, GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

This appeal is from a judgment for plaintiffs on a jury verdict, for personal injuries and property damage, against appellant as administrator of the estate of J. E. Samples, deceased.

While traveling on the Florida Turnpike, a divided toll road, out of control and at a very high speed, Samples' car struck in the rear the automobile of appellees traveling in the same direction. Samples and his wife, the sole occupants of their car, were killed in the accident. Appellees were injured.

Appellant's sole defense was that Samples had a sudden and unexpected heart attack or failure, causing him to lose control of his car, broadened in the later stages of the trial to the claim that Samples had an unforeseen and unexplained seizure or attack, the nature of which was unknown, and was dead or dying at the time of impact. In support of its theory appellant offered in evidence the death certificate on Samples.

The court admitted it into evidence except for the statement of the coroner contained therein that Samples "apparently had heart attack."

■ Appellant claims that the entire death certificate was admissible as a business record under the Florida statute.[1] We need not consider whether the certificate was a business record, or whether only the more particular Florida statute on admissibility of death certificates would govern, because the business records statute gives the trial judge discretion to exclude records if "the sources of information, method and time of preparation were [not] such as to justify its admission." Fla.Stat.Ann. § 92.36(2) (1960). The trial judge had before him evidence of the qualifications of the coroner, the time of preparation and the sources of information. He did not abuse his discretion.

■ Alternatively appellant relies upon Fla.Stat.Ann. §§ 382.20 and 382.35 (1960), providing that death certificates shall be prima facie evidence in any court of the facts contained therein. This contention raises underlying considerations of hearsay testimony and the admissibility of opinion testimony. Written official statements, which include certificates officially required to be made, are to some extent recognized as exceptions to the rules prohibiting hearsay assertions. There is a tendency to trustworthiness because the certificate is made by a public officer while carrying out his required duty and because the document is available for public inspection. Use of the certificate is a convenience also. To require the official be called from his public duties to testify may be inconvenient to him, the court, and the public; moreover, he may be unavailable by reason of conflicting engagements or death or other reason. See 5 Wigmore, Evidence §§ 1631–32. But the courts in their search for trustworthy and convenient means to reconstruct prior events—insofar as that is possible—in a judicial atmosphere, need not be mesmerized by a piece of paper, even an official one, so as to disregard realities. Some certificates embrace personal knowledge by the certifying officer of the thing recorded or certified, as the notary's acknowledgement that a signatory has personally appeared before him and acknowledged an instrument, the certificate of death by the treating physician in actual attendance, the certificate of marriage by the person performing the ceremony. But there cannot be imposed an unrealistically strict requirement of personal knowledge by the certifying officer, for the practical advantages of records of birth, marriage, death, divorce, and official registrations would be destroyed.

The nature of the fact or event certified may require no particular qualifications on the part of the certifying officer, as the notary's certificate that an acknowledgement has been taken, or the clerk's certificate that an automobile has been registered. Or it may require the highest degree of professional skill and training about a matter as to which well-qualified experts may have differing opinions—such as opinions as to cause of death, in a complex factual situation, by persons not in attendance at the time of death.

Against this background we look at what is here in issue.

The entry made by the coroner was based in part on information told to him by others at the scene, plus his own observations of the exterior condition of Samples' body. There was no autopsy. The coroner was also a justice of the peace.[2] He was a layman without medical training. His experience as coroner was not proved. There was no substantial evidence of any kind showing him to be qualified as an expert on causes of

1. Fla.Stat.Ann. § 92.36 (1960).

2. See Fla.Stat.Ann. § 936.01 (Supp.1968), which provides that justices of the peace within their respective jurisdictions shall hold inquests under specified circumstances and to that extent shall be deemed coroners.

death. He arrived at the scene 45 minutes to an hour after the accident and found Mr. and Mrs. Samples dead. The entry had nothing to recommend it as trustworthy except that it was made by one holding the office of coroner and is a public record.

The Florida District Court of Appeal has held inadmissible the statement of the coroner in a death certificate that a death was "probably accident" and that "deceased jumped out of a motor vehicle, during argument" because from the coroner it was hearsay:

> The coroner could not have testified that the death was "probably accident" nor to the fact that "deceased jumped out of a moving motor vehicle, during argument" because from the coroner such testimony would have been hearsay. It necessarily follows that the same statement on a piece of paper in no way increases the statement's probative value. The statute provides that all the "facts" in the death certificate shall be prima facie evidence to the facts therein stated. The two statements of the coroner or the medical examiner on the death certificate did not constitute "facts", but unverified opinion which was not entitled to judicial consideration.

Southern Life & Health Ins. Co. v. Medley, 161 So.2d 19, 21 (1964).

■ The court in *Southern Life* did not, as contended by appellant, carefully limit its holding to one that a coroner's finding is inadmissible on the issue of suicide. The above-quoted language was preceded by the statement,

> When the legislature adopted § 382.-35(6), Fla.Stat., F.S.A., they did not change any of the substantive provi-

sions of the law of evidence, they merely made procedural changes.

Id.

Analysis is not to be based on the formalities of the nature of the cause of action but on the realities of proffered evidence as trustworthy and of probative value on the issues involved. See also Mutual Life Ins. Co. of New York v. Bell, 147 Fla. 734, 3 So.2d 487 (1941); World Ins. Co. v. Kincaid, 145 So.2d 268 (Fla.Dist.Ct.App.1962). In Life Ins. Co. of Virginia v. Brockman, 173 Va. 86, 3 S.E.2d 480 (1939), the medical certificate of the coroner was excluded when he testified that his opinion as to the cause of death was based on statements of bystanders. In the present case the coroner's opinion would have been inadmissible if proffered on oral examination.[3] It was not made admissible because included in an official document. The trial court excluded the reference to cause of death on the ground it was an opinion by one not shown to be an expert. This was not error.

■ The trial court did not err in excluding the opinions of the coroner and the funeral director concerning the significance of lack of blood on Samples' body, offered as tending to show that his heart had stopped beating prior to the accident. We already have referred to the lack of proof of expert status for the coroner. Whether the funeral director was qualified was within the discretion of the trial judge, and that discretion is not shown to have been abused.[4] Seminole Shell Co. v. Clearwater Flying Co., 156 So.2d 543 (Fla. Dist.Ct.App.1963).

The appellant makes no contention that any of the excluded evidence was admissible under a more liberal federal standard.[4a]

---

3. In passing, it may be noted that the statement of the coroner's opinion was ambiguous. The trial judge considered the phrase "apparently" to connote that he was uncertain of his conclusion. Counsel for the appellant argued that "apparently" meant "obviously" or "patently."

4. Florida does not require a funeral director to be medically trained. Fla.Stat. Ann. § 470.08 (Supp.1968).

4a. Cf. Dallas County v. Commercial Union Assur. Co., 286 F.2d 388 (5th Cir. 1961); Monarch Ins. Co. of Ohio v. Spach, 281 F.2d 401 (5th Cir. 1960).

Appellant objected to the jury instruction on the existence and effect of the presumption arising from a rear end collision.[5] The last two sentences of the instruction were taken from Malcolm v. Patrick, 147 So.2d 188, 192 (1962), a decision of the District Court of Appeals of Florida. The Florida Supreme Court, however, set out the proper rule very clearly in the later case of Gulle v. Boggs, 174 So.2d 26 (1965):

> The presumption provides a prima facie case which shifts to the defendant the burden to go forward with the evidence to contradict or rebut the fact presumed. When the defendant produces evidence which fairly and reasonably tends to show that the real fact is not as presumed, then the impact of "the presumption is dissipated". Whether the ultimate fact has been established must then be decided by the jury from all of the evidence before it without the aid of the presumption. At this point the entire matter should be deposited with the trier of the facts to reconcile the conflicts and evaluate the credibility of the witnesses and the weight of the evidence.
>
> When the matter goes to the jury in this posture it must be without the aid of the presumption, which has been reduced to the status of a permissible inference or deduction which the jury may or may not draw from the evidence before it.

Id. 174 So.2d at 28–29. See also Dornton v. Darby, 373 F.2d 619 (5th Cir. 1967); McNulty v. Cusack, 104 So.2d 785 (Fla.Dist.Ct.App.1958). The instruction did not correctly state the law, but the error was without injury. The presumption of negligence arising from a rear-end collision was applicable, even though both automobiles were moving. Stephens v. Dichtenmueller, 207 So.2d 718 (Fla.Dist.Ct.App.1968); see also Shaw v. York, 187 So.2d 397 (Fla.D.C. App.1966); Busbee v. Quarrier, 172 So. 2d 17 (Fla.Dist.Ct.App.1965); Rianhard v. Rice, 119 So.2d 730 (Fla.Dist.Ct.App. 1960). Once the presumption came into existence the plaintiff had satisfied his burden of non-persuasion of the jury. The obligation was then cast upon the defendant to produce "evidence which fairly and reasonably tends to show that the real fact [i. e., negligence of Samples] is not as presumed." If the defendant did so the impact of the presumption was dissipated. Whether the defendant had produced such evidence was for the court, a matter of satisfying the judge (though not with a preponderance), not a matter of persuading the jury. The appellant did not produce evidence "fairly and reasonably tending to show" that Samples was not negligent as presumed. The defense of heart attack, or some other unexpected, unforeseen, and unidentified physical or mental catastrophe, never rose above a scintilla at most, conjecture and speculation at least. The trial court should have instructed the jury that the presumption of negligence required a verdict for the plaintiff. The submission to the jury, albeit under an erroneous standard, was

---

5. "I charge you that proof by the plaintiffs to the degree I have described to you, that the defendants' automobile, that is the automobile of the Administrator [sic] decedent Mr. Samples, struck the plaintiffs' automobile in the rear, while the plaintiffs' automobile was in the proper lane of traffic, is prima facie evidence of negligence. This prima facie evidence may be overcome by the defendant by proof of surrounding circumstances and conditions which will eliminate the character of or responsibility for negligence from the collision. In this connection, I charge you that a sudden attack resulting in loss of control of the car would constitute the surrounding circumstances and conditions which would eliminate the character of negligence. In this regard I charge you that when the plaintiffs establish a prima facie case of negligence, the burden of proof is cast upon the defendant to show the sudden physical incapacity; and further to show that it was unanticipateable and unforeseen."

more than the defendant was entitled to.[6]

■ Appellant's claim that it was entitled to a mistrial or new trial based on asserted references to interest of an insurer in the case is without merit.

The judgment below is affirmed.

6. The trial judge ruled that defense counsel could not argue to the jury that Samples had suffered a heart attack because the evidence did not warrant it, but did allow argument that Samples had suffered some kind of unexplained attack or seizure and was dead before the accident.