No. 12,863.

HOPKINS *v.* THE PEOPLE.
(1 P. [2d] 937)

Decided June 29, 1931.

Mr. GEORGE H. LERG, for plaintiff in error.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. ED-WARD J. PLUNKETT, Assistant, for the people.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

W. M. HOPKINS, plaintiff in error, hereinafter referred to as defendant, was convicted of embezzlement, and prosecutes this writ, assigning as error: (1) Denial of motion for change of venue; (2) denial of motion for mistrial; (3) admission of improper evidence; (4) remarks and comments of trial judge during the course of the trial and in the presence of the jury; (5) refusal to give tendered instructions, and also the giving of an instruction, and (6) denial of motion for directed verdict.

The information charges that defendant was the regularly appointed, duly qualified and acting administrator of the estate of Miers Fisher, deceased, and, as such administrator, had in his possession the sum of $29,000, which said sum, on June 27, 1930, he feloniously embezzled and fraudulently converted. Defendant plead not guilty.

1. The trial began on February 26, 1931. On February 7, 1931, defendant's motion for a change of venue based on the prejudice of the inhabitants of the county was heard, and denied. Defendant supported his motion with the affidavits of ten persons presumably residents of Adams county. These affidavits state that in affiant's opinion defendant cannot secure a fair and impartial trial in Adams county because the inhabitants thereof are prejudiced against him by reason of an alleged connection with a bank failure in which many of the inhabitants were depositors and stockholders; which bank failure and defendant's connection therewith were given undue publicity through the newspapers. In addition to the above, these affiants also state that defendant's alleged defalcations in the estate matter have been the subject of widespread and unfavorable gossip. Counter-affidavits were filed by eight residents of Adams county, who state that the defendant can secure a fair

and impartial trial in Adams county, and that no considerable prejudice against him exists. The district judge who heard and denied this motion was a resident of this judicial district, and well qualified to pass upon the question presented. The law vests him with a discretion in these matters which he is presumed to have exercised wisely. This presumption is supported by the record, for it discloses that twenty-seven jurors were examined; that the people exercised three peremptory challenges, while the defendant exercised ten, and yet neither party challenged a juror for cause. This remarkable circumstance, in itself, would clearly indicate that defendant's fears of prejudice were unfounded.

Defendant relies upon our decision in *Jabich v. People*, 58 Colo. 175, 178, 143 Pac. 1092, in support of his contention that error was committed in denying his motion. The opinion in the Jabich case, supra, contains a statement of facts which themselves clearly distinguish that case from the one now under consideration, and the law as announced in the Jabich case certainly has no application to the facts here. The latest expression of this court on motions for a change of venue is found in *Abshier v. People*, 87 Colo. 507, 520, 289 Pac. 1081, where it is said: "The granting or refusal of a motion for change of place of trial is one of the many matters wisely lodged in the discretion of the trial court, and in the absence of abuse, the order will not be disturbed [citing cases]. No abuse of discretion appears here." See, also, *Giacomozzi v. People*, 72 Colo. 13, 15, 209 Pac. 798; *Patton v. People*, 74 Colo. 322, 325, 221 Pac. 1086; *Wilder v. People*, 86 Colo. 35, 42, 278 Pac. 594.

Under the authority of all of our decisions, there was no error committed in denying the motion for a change of venue.

2. Defendant's counsel had exercised his tenth and last challenge when juror Tiedeman was called into the jury box, and was examined by counsel, who, after an exhaustive and searching examination, found no ground

upon which to challenge for cause, and accepted the juror. On the second day of the trial, in the absence of the jury, defendant's counsel stated to the trial judge that he had just learned of an alleged statement of the juror Tiedeman which, if true, disqualified him as a juror, and he wished to present this statement as a basis of a motion for a mistrial. Counsel then stated that juror Tiedeman, in the presence of four witnesses, before being called as a juror, but while in attendance upon court, had stated "That defendant, W. M. Hopkins, ought to have been sick a long time ago and should have been in the penitentiary a long time ago." Defendant's counsel say that "he was not only biased and prejudiced against the defendant, but had already made up his mind upon the question of the guilt of defendant." In the voir dire examination of the juror Tiedeman, it developed that he had been a depositor in the bank in which defendant had once held a responsible position; that he had lost money by reason of the bank failure, but the prospective juror stated that he fully realized that defendant was not on trial for his part, if any, in the bank failure, and that he could and would if chosen give the defendant a fair and impartial trial upon the charge upon which he was to be tried.

Counsel cite *Fitzgerald v. People,* 1 Colo. 56, 58, et seq., as authority for his contention that the motion for a mistrial should have been granted, but the most casual reading of the Fitzgerald case, supra, clearly distinguishes it from the case under consideration. No doubt as to prejudice could exist when one considers the language used by the juror in the Fitzgerald case, supra, and no one can question the fact that the juror in that case had a preconceived definite opinion, while that does not appear as a fact here. It is also noteworthy that the Fitzgerald case, supra, has never been cited in this jurisdiction upon the point under discussion here. If the ground for the motion for a mistrial was good, it was equally available to defendant as a ground for a new trial. There was no

error in denying the motion for a mistrial, because the showing made in support thereof was insufficient. Counsel, however, is to be commended for the prompt manner in which he brought this matter to the court's attention. For recent cases in point see: *Baker v. People,* 72 Colo. 68, 77, 209 Pac. 791; *McGonigal v. People,* 74 Colo. 270, 272, 220 Pac. 1003; *Fleagle v. People,* 87 Colo. 532, 537, 289 Pac. 1078.

3. Complaint is made to the admission and refusal to admit certain evidence. One Lindsay, a certified public accountant, was called by the people to testify to certain facts learned by him in the examination of the record in the Miers Fisher estate in the county court. The county court record was long and very much involved, and the evidence of Lindsay assisted the jury materially in determining certain facts which the district attorney considered important and which the trial court held to be proper evidence. It affirmatively appears from this record that Lindsay was employed by the county or county court, and that he had no business or professional connection with defendant. The testimony of Lindsay was objected to by defendant because of the provisions of paragraph 6, page 644, chapter 185, Session Laws of Colorado, 1929, which provides that a certified public accountant shall not, under certain circumstances without the consent of his client, be examined as a witness. The employment of Lindsay was not by defendant, and in the absence of proof that defendant was Lindsay's client, the statute has no application whatever to the facts in this case.

Complaint is also made as to some remarks of the district attorney, and this is argued as error. The record shows that the district attorney as well as counsel for defendant frequently addressed remarks to each other rather than presenting their objection in an orderly manner to the trial judge. The remarks in themselves were not of such a serious nature as to require attention, and,

as defendant's counsel, in several instances, invited the remarks, we will not consider them further.

Complaint is also made that defendant was not permitted to interject into the case evidence which would not be material in any event, and certainly not a defense to the charge. We understand from all the record that defendant made no attempt whatever to comply with the statutes with reference to the investment of estate funds, and yet he wished to introduce as a defense, or as evidence in support of a defense, the fact that he had tendered to the estate the worthless securities he had purchased in his own name and in violation of the statute. It is also noteworthy that the first tender of the securities, so far as is disclosed by this record, was by a final report tendered for filing after this trial had begun. So far as the record discloses, this was the first intimation that any one charged with any duty respecting the estate had that the funds were not intact, although defendant himself says that at some time, indefinite as to date, he advised the county judge of his investments. This testimony of defendant was flatly contradicted by the county judge. It is worthy of mention in this connection that the record discloses that the securities which defendant says were purchased by him for the estate were taken in his name individually, and not in a representative capacity, which leads us to surmise that if the investment had been profitable, the investment would have been defendant's, while if it proved practically worthless, as appears to be the case here, it belonged to the estate. The position taken by defendant insured his protection whether the investment proved good or bad, because if good, he could repay the estate, and if bad, he was under no obligation to pay. When defendant violated the law with reference to the investment of estate funds, and unlawfully converted to his own use the trust funds of the estate therefor, he became guilty of embezzlement, irrespective of the outcome of such transactions.

4. During the course of the trial, frequent disputes

arose between counsel, for which the attorneys for defendant were not always, but quite frequently responsible. Numerous objections, most of them without merit, were interposed, and these also led to repeated discussions between counsel, while the court in a most patient and courteous manner, repeatedly attempted to maintain that orderliness and decorum which should mark every trial and, diligently explained its reasons for rulings on objections. This courtesy, on the court's part, is made the subject of an assignment of error. An examination of the entire record does not disclose any prejudice to defendant by reason of the court's remarks, and we fail to understand how they could have influenced the jury. In the face of a confession, which is only repudiated in part by defendant, no jury mindful of its oath and duty could have reached any other verdict than one of guilty.

██ ██ Any evidence which would go to the intent of defendant would be proper, and so far as the record discloses, no such evidence offered by defendant was rejected. Intent not to embezzle is not proven by an offer to return the embezzled property after the trial has started and such testimony was properly excluded.

██ 5. Defendant tendered nine instructions for the refusal to give which he assigns error, and error is also assigned to the giving of instruction No. 5. The first tendered instruction was upon the presumption of innocence, but inasmuch as the court gave the usual and time-honored instruction upon this question, to which no objection was or could have been made, there was no necessity for giving another instruction upon this question. Four tendered instructions were upon the question of defendant's good faith in making investments, which, defendant contends, were for the estate. The court, in its instructions, among others, defined a crime; defined the crime of embezzlement and specifically called attention to its various elements; defined the burden of proof, and also intent. The instruction on the burden of proof is the one generally used in criminal cases in this state for

many years, and so far as we have observed has never been questioned. By this instruction the people were required to prove every element of the offense beyond a reasonable doubt before the jury could return a verdict of guilty. The instructions, as a whole, were positive statements of legal principles, while every tendered instruction of defendant was negative. Positive rather than negative statements in instructions are preferable. No error was committed in refusing these four tendered instructions. One tendered instruction, covering the question of a confession, was not erroneously excluded, because the jury was correctly instructed by the court on the law of confessions, as applied to the case under consideration.

The instructions as a whole correctly stated every principle of law necessary to guide the jury in a right determination of this case, and they were therefore sufficient, and no error was committed in refusing the tendered instruction of defendant. Instruction No. 5, given by the court, was a statement of the statute with reference to the lawful investment of estate funds, and was a proper instruction for the jury's guidance.

6. Defendant's next and last assignment is the refusal of the court to grant defendant's motion for a directed verdict. At the time the motion was interposed, the people had offered evidence that the defendant was the administrator of the estate of Miers Fisher, deceased, by appointment of the county court of Adams county; that the county court had required the resignation of defendant, which resignation was tendered on June 28, 1930, but at that time no final report was filed. After some persuasion on the county court's part, a final report was tendered on November 12, 1930, which shows: "Balance cash due the estate—$32,919.20," this tendered report covering the period from March 15, 1930, to the date thereof. The March 15, 1930, report showed, "Balance cash on hand March 15, 1930—$30,169.48." The confession offered and received in evidence discloses that the

report filed in March, 1930, was wholly false because more than a year prior thereto defendant had used all the available funds in the estate to purchase some farming land near Saratoga, Wyoming, and more than a year prior to the November, 1930, report, he had traded the Wyoming property for some land of questionable value in Larimer county, Colorado. It was also shown that the Saratoga, Wyoming, and Larimer county, Colorado, property stood in defendant's name as an individual. The people also offered evidence to show that practically all of the available funds of the estate were used by defendant in conducting his own personal affairs, and that the title to all property purchased was taken in defendant's name. His confession was freely and voluntarily made and disclosed the entire transaction. Evidence had been offered sufficient to establish every element of the crime, and no error was committed in denying defendant's motion for a directed verdict.

Defendant was an experienced business man who, according to his own testimony, had had years of experience as a bank president; he violated the law with reference to estate funds, and betrayed the trust reposed in him. Even before he was arrested, but after his bondsmen had become suspicious of the condition of the estate, he transferred the title to the property purchased with estate funds, standing in his name, to a real estate agent in Denver, and subsequently to one of his bondsmen, who testified that the transfer to him was to protect him against loss by reason of being on the bond of defendant as administrator. The story which defendant related upon the witness stand evidently impressed the jury much as it has impressed us, and we find it impossible to give it credence. The defendant was properly convicted, and no prejudicial error has been called to our attention.

Defendant was represented by able counsel, who were assiduous in protecting his every right, and whose conduct and presentation of his defense brought to the atten-

tion of the court and jury every proper circumstance for their consideration.

Judgment affirmed.