**Moe WEISE and James Lester French, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 15502.

United States Court of Appeals Ninth Circuit.

Feb. 5, 1958.

Rehearing Denied March 11, 1958.

Edward Mosk, Hollywood, Cal., for appellants.

Charles P. Moriarty, U. S. Atty., Seattle, Wash., Charles W. Billinghurst, Asst. U. S. Atty., Tacoma, Wash., for appellee.

Before HEALY, POPE and LEMMON, Circuit Judges.

HEALY, Circuit Judge.

Appellants were convicted of the offense of transporting obscene material interstate (from Portland, Oregon, to Tacoma, Washington) in violation of 18 U.S.C.A. § 1465. On the appeal they contend only that the trial court erred in admitting the obscene material in that it had been illegally seized in violation of the Fourth Amendment to the Constitution.

Following is in summary the train of events leading up to the arrest and seizure. Appellant Weise was known to the agents of the Federal Bureau of Investigation as a dealer in pornographic material and of having a record of convictions as such. On March 15, 1956, he was under agency surveillance at Los Angeles. On that date he and appellant French left Los Angeles in the former's car, which was observed to be heavily loaded. FBI agents followed them to San Francisco where Weise told an agency informer that he had pornographic material for sale. While in San Francisco appellants were observed making calls at novelty shops which were known to deal in obscene material. At each call packages were removed from the car and delivered to the shop or store. Agents in Oakland and Sacramento observed similar activities of appellants in those cities.

Appellants then drove to Portland, where they were again placed under sur-

veillance by the FBI and were observed as before taking packages into stores known to deal in obscenity. On the night of March 17 appellants left Portland and traveled to Tacoma, being constantly under surveillance. Meanwhile Agent Heiner in Seattle, who had been kept advised of the activities through normal agency channels, filed a complaint charging violation of the relevant statute, the charge being lodged with United States Commissioner Burns in Seattle, who issued a warrant of arrest thereon. Simultaneously Agent Ralston in Tacoma was briefed on the above facts in a 45-minute phone conversation with the Seattle agent. Ralston undertook surveillance of appellants' car as it passed through Olympia and followed it to Tacoma. He personally observed that the car in question was heavily loaded and contained cardboard boxes piled on the back seat. In Tacoma appellants were stopped and placed under arrest. The boxes were seized incident to the arrest and were found to contain some 60,000 photographs and various other pornographic material.

██ The seizures were made without a search warrant. However, as indicated above, they were incident to the arrest of appellants, and if the arrests were lawful, the seizures were lawful. Marron v. United States, 275 U.S. 192, 48 S. Ct. 74, 72 L.Ed. 231; Sugarman v. United States, 9 Cir., 35 F.2d 663, at page 665. But appellants argue that the arrests were illegal because, they say, there was no sufficient ground either for the issuance of the warrant of arrest or for an arrest without a warrant. They insist that the activities and knowledge of the FBI were insufficient to create probable cause to believe that an offense was being committed. The contention is predicated on the proposition that the arrest is illegal unless the arresting officer himself has probable knowledge that an offense is being committed.

The cases cited for this proposition are United States v. Tureaud, D.C.1884, 20 F. 621; and Grau v. United States, 287 U.S. 124, 53 S.Ct. 38, 77 L.Ed. 212. The Tureaud case, in addition to being old, involved, not a warrant for arrest, but a sworn information—a proceeding no longer in use. In light of the later cases it is wholly without validity. The Grau case is not in point. It involved a search warrant which was held not to state certain vital facts required by the National Prohibition statute, providing that "no search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor." The affidavit for the warrant in question showed only a possible manufacture of spirits. By way of dicta the Court observed, 287 U.S. at page 128, 53 S.Ct. at page 40, "A search warrant may issue only upon evidence which would be competent in the trial of the offense before a jury [citations]; and would lead a man of prudence and caution to believe that the offense has been committed."

In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, a rum-running case not markedly different from the present on its facts, the Supreme Court observed 338 U.S. at page 175, 69 S.Ct. at page 1310, of its opinion that "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." And, 338 U.S. at page 174, 69 S.Ct. at page 1310, note 13, the Court referred to the dictum in Grau v. United States, supra, which we have quoted above, and went on to say that "for this proposition there was no authority in the decisions of this Court."

See further the holding of the Third Circuit in the analogous case of United States v. Bianco, 189 F.2d 716. Consult, also, United States v. Li Fat Tong, 2 Cir., 152 F.2d 650, 652.

Affirmed.