## No. 23542

### Thomas Julius Sergent v. The People of the State of Colorado
(497 P.2d 983)

Decided February 28, 1972. Rehearing denied June 12, 1972.

John S. Carroll, Rebecca L. Bradley, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, James F. Pamp, Assistant, Michael T. Haley, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Thomas Julius Sergent was charged with the murder of Milton and Mildred Moeller in San Juan County, Colorado. Pursuant to his motion for change of venue and the agreement of his counsel, the defendant was tried for the murder of Milton Moeller in the district court of La Plata County, Colorado, after a second motion for change of venue was denied. The jury found the defendant to be guilty of first degree murder, and he was sentenced to life imprisonment.

The defendant was represented by experienced trial counsel who protected his rights at each stage of the proceedings. Our view of the record causes us to conclude that reversible error did not occur in the trial of the case, and we, therefore, affirm.

## THE FACTUAL BACKGROUND

After the Moellers were reported missing and their G.M.C. camper was found abandoned with bloodstains and a bullet hole in it, foul play was suspected. Pictures which were obtained from the abandoned camper identified the Moellers' campsites as the Lime Creek Camp Ground and the South Mineral Creek Camp Ground. An investigator for the district attorney searched both campsites. The search resulted in the discovery of the remains of both Milton and Mildred Moeller and their dog, Dusty, in a privy in the Lime Creek Camp Grounds.

An autopsy disclosed that both the Moellers had suffered gunshot wounds which were sufficient to cause their death. The dog had been clubbed to death. The bullet hole in the bloodstained camper of the Moellers yielded a .45 caliber slug that agents of the Federal Bureau of Investigation found to be identical to the bullets found in the bodies of the Moellers.

The investigator for the district attorney also recovered a

30-30 rifle barrel from the privy. The rifle barrel was later matched to a rifle stock that was found with some of the defendant's clothing and a sleeping bag not far from the area where the Moellers were found. Numerous people saw Sergent in the Lime Creek Camp Ground area at a time which approximated the date of disappearance of the Moellers. Moreover, an employee at the bus station in Del Norte identified Sergent as the person who purchased a bus ticket for Omaha and obtained permission to leave the Moellers' camper in the lot adjacent to the bus station.

Based on this information, a complaint was issued by the district attorney for the Sixth Judicial District charging the defendant with the double murder. Charges of unlawful flight to avoid prosecution for murder and for violation of the Dyer Act were contemporaneously filed by the Federal Bureau of Investigation, and federal warrants issued for the arrest of the defendant. The Dyer Act charge arose out of the theft of a car in Ely, Nevada, which was found stripped in the vicinity of the South Mineral Creek Camp Ground. Sergent was identified as the person living in the car just prior to the time the Moellers' camper was abandoned in Del Norte.

Sergent was not seen again until his arrest occurred near Oscoda, Michigan, where he had been hiding out in a cave ever since he learned he was being hunted by the police. At the time of his arrest, the defendant was in a car owned and driven by his sister. Sergent contacted his sister, who notified the police that her brother wanted her to pick him up. Sergent's sister cooperated with the police and met her brother and drove him to the scene of the arrest. The arrest occurred approximately eight miles from Oscoda, Michigan, on a public highway. When the defendant was arrested, the police officers conducted only a pat-down search because of the cold and inclement weather. At the time of the arrest, the defendant was asked if he had any guns, and he responded, "Yes. They are in the trunk." The officers then opened the trunk, removed the defendant's footlocker from the trunk, and took the defendant and his footlocker to the East Tawas State Police Post, some ten miles away. During the trip back

to the police station, the defendant was advised of his rights, and at that time, he said that he desired to remain silent.

At the police station, the defendant was asked for the combination to the lock on his footlocker, and he gave the police the combination. He was then strip-searched. The strip-search resulted in the discovery of a small zip gun and cartridge which was hidden in the heel of the defendant's shoe. After the defendant's clothing and shoes were searched, he was allowed to dress and was readvised of his constitutional rights with an advisement form. The F.B.I. agent who searched the footlocker then informed the defendant that he had found a .45 caliber automatic pistol in the footlocker. The defendant replied that "[t]here is a .25 in the footlocker wrapped in a poncho." After finding the other gun, the agent returned and asked if the defendant was aware of his rights. The defendant told the agent that he was aware of his rights. Upon further questioning, the defendant admitted ownership of the weapons and stated that he had bought them in Nevada.

On the evening of his arrest, the defendant was taken before a United States Commissioner for arraignment on the federal charges which were pending against him. The defendant was again advised of his rights and was told that the purpose of the hearing was to set bond and that no plea need be made. He was also told that he could make any statements that he thought the Commissioner should consider in setting bond and that he had a right to an attorney. Sergent advised the Commissioner that he did not desire counsel, but he did not make a statement.

At first, he requested a removal hearing, and then on December 13, 1966, he indicated that he had elected to return to Colorado and that he desired to waive extradition and the removal hearing. When the Commissioner presented the forms to the defendant, the defendant was again advised of his rights and signed a form indicating that he had received the required warning. After the form was signed, the defendant told the Commissioner that he had camped in an area near Silverton, Colorado, and that he observed a

camper-style vehicle in the area in a public or semi-public camping area. He told the Commissioner that he realized that his pistol had been used to kill these people, but that he didn't know how it was used. He also indicated that he didn't use the .45 caliber pistol, but that somehow or another he had lost possession of his .45 caliber Colt automatic for a short period of time. The Commissioner made no further inquiry. The record also discloses that Sergent, after being advised of his rights, signed another advisement form and told another F.B.I. agent that he would rather talk to them than remain in his cell.

After the defendant was returned to Denver, he was questioned by Erwin R. DeLuche in the United States Marshal's office. DeLuche informed the defendant once again of his rights and told the defendant that he desired to discuss the defendant's possession of the Moeller camper and the statement he had given to the F.B.I. The defendant acknowledged that he was fully aware of his rights and then proceeded to tell DeLuche some of the facts which tied the defendant into a circumstantial web of complicity in the double murder.

I.

## PREJUDICIAL PUBLICITY AND CHANGE OF VENUE

The grisly nature of the crime charged generated interest in the news media, but did not result in an inordinate amount of publicity. As a result of the news coverage, the defendant has raised the issue of trial by newspaper as a basis for reversal, claiming that prejudicial publicity denied him a fair trial. Because of the alleged adverse publicity, the defendant also has contended that the trial judge erred in failing to grant a change of venue. Venue was laid in San Juan County and was changed to La Plata County at the request and pursuant to the motion and agreement of defense counsel. After venue was changed once, defense counsel filed a second request for a change of venue. The denial of the second request for a change of venue is the basis for the defendant's assertion of error.

■■■ The record reflects that the news media covered both

the disappearance of the Moellers and the apprehension and trial of Sergent. Publicity was given to the case by radio, television, a detective magazine, and the newspapers. It is apparent that some of the news media articles that are complained of were prompted by the defendant granting interviews to reporters for *The Denver Post*. Other articles were based on news releases that were made by one of defense counsel. In addition, the district attorney made news releases that were contrary to good practice. The news releases which stemmed from the action and words of prosecution and defense counsel are not to be lightly condoned. *See American Bar Association Standards of Criminal Justice Relating to Fair Trial and Free Press,* § § 1.1, 2.1(a),(c); *American Bar Association Standards of Criminal Justice Relating to The Prosecution Function* [§ 1.3] *and The Defense Function* [§ 1.3] ; Canon 7, DR7-107, *Code of Professional Responsibility,* C.R.S. 1963, Vol. 1, 1970 Revision, pp. 99-102 (1971 Supp.). *See also 6 T. Borrillo, Colorado Practice, Criminal Practice and Procedure* § 811 (1971). The publicity was not so extensive, pervasive, and prejudicial, however, that the denial of a fair trial may be presumed, as in *Walker v. People,* 169 Colo. 467, 458 P.2d 238 (1969); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); and *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).

██ In the absence of massive publicity that could be said to have contaminated the community, the defendant must establish a nexus between the publicity and the alleged denial of a fair trial. *See Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Corbett v. Patterson,* 272 F.Supp. 602 (D.C. Colo. 1967). Here the voir dire amply demonstrates the absence of prejudice and the ability of the jurors to set aside any opinions that they may have received from the news media to the end that the case could be determined on the law and on the evidence.

In the light of *Small v. People,* 173 Colo. 304, 479 P.2d 386 (1970), the defendant's contention that the trial judge erred in refusing to grant a change of venue is also without merit. The *Small* case held that except in the cases, such as *Walker, supra,* and *Sheppard, supra,* in which the publicity was extensive and pervasive, this Court will not reverse a denial of a change of venue by reason of publicity unless it can be shown that the publicity had an adverse effect upon the jury panel or a portion thereof. *See Oaks v. People,* 161 Colo. 561, 424 P.2d 115 (1967); *Martz v. People,* 114 Colo. 278, 162 P.2d 408 (1945); *Hopkins v. People,* 89 Colo. 296, 1 P.2d 937 (1931); *Abshier v. People,* 87 Colo. 507, 289 P. 1081 (1930). No such showing has been made in this case.

It is also noteworthy that defense counsel failed to comply with Crim. P. 21 (c)(1), which requires that an application for a change of venue be supported by affidavits and that reasonable notice be given to the prosecuting attorney to allow time for filing counter-affidavits. Here, defense counsel did not file the requisite affidavits with the application for a change of venue. Instead, defense counsel waited to file affidavits until the day that the motion came on to be heard. Since the record reflects that the affidavits were in existence for some time prior thereto, it is evident that defense counsel's actions effectively deprived the district attorney of a reasonable opportunity to answer the affidavits in support of a change of venue.

Furthermore, from the limited number of affidavits that were filed by defense counsel and from the record as a whole, it does not appear that the trial judge abused his discretion in denying a change of venue. Indeed, the voir dire examination of the jury fully supports the judge's determination that a second change of venue was unnecessary to protect the defendant's right to a fair and impartial trial.

## II.
## PRELIMINARY HEARING

The defendant next urges us to reverse because the trial court lacked jurisdiction in the absence of a preliminary

hearing. Under Colo. R. Crim. P. 7 (b)(3)(i), as the rule existed at the time, there was no right to a preliminary hearing when a direct information was filed. Furthermore, there is no constitutional right to a preliminary hearing, and the failure to grant a preliminary hearing does not vitiate his conviction. *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Falgout v. People,* 170 Colo. 32, 459 P.2d 572 (1969).

## III.
## INFORMATION

■ Looking to the constitution, the defendant contends that the proceedings were void because he was not afforded the protection of a grand jury. U.S. Const. amend. V (Fifth Amendment); Colo. Const. art. II, § § 25, 26. He asserts that every accused has the right to have a grand jury screen the evidence to determine whether the requirements of probable cause have been met. The defendant's argument has been answered by us in *Falgout v. People, supra,* where we upheld the validity of the Colorado practice of effecting a charge through an information.

## IV.
## INCULPATORY STATEMENTS

■ Defense counsel contends that the trial court erred by admitting statements elicited from the defendant after the defendant had indicated a desire to remain silent. It is argued that once the defendant had elected to remain silent, the police were forever foreclosed from questioning or talking to the defendant about any phase of the criminal conduct that was charged. We do not read or interpret the United States Supreme Court opinion in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), so broadly. Such an interpretation is not justified by the opinion of the Court in *Miranda,* nor is it justified in terms of the evils *Miranda* sought to overcome or prevent. What the Court condemned in *Miranda* were those cases in which the police refuse to take "no" for an answer and continue to question, harass, cajole, and coerce the defendant to cast aside his desire to exercise his constitutional right to remain silent. See discussions of

this very point in *Miller v. California,* 392 U.S. 616, 88 S.Ct. 2258, 20 L.Ed.2d 1332 (1968); *Jennings v. United States,* 391 F.2d 512 (5th Cir. 1968); *State v. Godfrey,* 182 Neb. 451, 155 N.W.2d 438 (1968); *State v. McClelland,* 164 N.W.2d 189 (Iowa 1968); *State v. Bishop,* 272 N.C. 283, 158 S.E.2d 511 (1968). *See also, Carroll v. People,* 177 Colo. 288, 494 P.2d 80; *People v. Duran,* 269 Cal.App.2d 112, 74 Cal.Rptr. 459 (1969); *Hill v. State,* 429 S.W.2d 481 (Tex. 1968). *Contra, People v. Fioritto,* 68 Cal.Rptr. 817, 441 P.2d 625 (1968).

▇ The question, as we see it, is whether the defendant was given a proper warning, knew what his rights were, and then voluntarily waived those constitutional rights. The record amply supports a waiver and the admission of the incriminatory statements.

V.

SEARCH AND SEIZURE

The defendant contends that the trial court erred in admitting into evidence the two pistols taken from the footlocker because they were obtained by an illegal search and seizure. The defendant relies on four grounds in support of his contention that the search and seizure were illegal: (1) the affidavit supporting the arrest warrant fails to show probable cause and, consequently, the search was not incident to a valid arrest; (2) the arresting officers did not have the arrest warrant with them at the time they arrested the defendant; (3) the arresting officers had no authority to search the car belonging to the defendant's sister; and (4) even if the arrest was valid, the search and seizure was not incident to the defendant's arrest.

▇ Admittedly, the complaint in San Juan County, standing alone, would not support an arrest warrant, because no facts were set forth to establish probable cause. *See People v. Moreno,* 176 Colo. 488, 491 P.2d 575 (1971). However, the federal warrants were supported by affidavits which squared with all constitutional requirements, and they provided a legitimate basis for the defendant's arrest. The defendant's claim that the officers were required to have the

arrest warrants with them is wholly without merit. *Cf. Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). *Fraker v. United States,* 294 F.2d 859 (9th Cir. 1961); *Weise v. United States,* 251 F.2d 867 (9th Cir. 1958); *People v. Webb,* 56 Cal.Rptr. 902, 424 P.2d 342 (1967).

 Under the circumstances, we believe that the seizure of the defendant's footlocker from the trunk of his sister's car was reasonable and consistent with the law established by the United States Supreme Court in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and *United States v. Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). The defendant's contention that the officers lacked authority to search the trunk of his sister's car does not have merit, because his sister consented to the procedures which were followed and cooperated with the F.B.I. in making the arrest possible.

Whether or not the search of the footlocker was incident to the defendant's arrest need not be decided, since it is clear that the defendant consented to the search after he had been given his *Miranda* warnings and had indicated that he understood his rights. *See United States v. Vickers,* 387 F.2d 703 (4th Cir. 1967); *State v. Crews,* 38 Ill.2d 331, 231 N.E.2d 451 (1967); *State v. Thompson,* 273 Minn. 1, 139 N.W.2d 490 (1966); *State v. Sherrick,* 98 Ariz. 46, 402 P.2d 1 (1965).

## VI.
## DISCOVERY

As additional grounds for reversal, the defendant would have us extend the principles laid down in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), to the instant case. The *Brady* case requires the prosecution to disclose evidence favorable to an accused where the evidence is material either to guilt or to punishment. The *Giles* case provides that disclosure must be made

at such time or under such conditions that the accused may be afforded a proper defense.

In this case, the defendant contends that there was a bloody fingerprint that was withheld from him. The record discloses that the fingerprints were present in court and that the defendant had ready access to the evidence that he now claims he could not use. Note, *The Duty of the Prosecutor to Disclose Exculpatory Evidence,* 60 Colum. L. Rev. 858 (1960). *See also, Levin v. Katzenbach,* 124 U.S.App.D.C. 158, 363 F.2d 287 (D.C. Cir. 1966); *United States v. Bryant,* 439 F.2d 642 (D.C. Cir. 1971).

This Court has made mammoth strides towards recognition of a defendant's right to discovery in a criminal case. The law announced in a series of cases in the period that extended from 1950 to 1970 cannot be said to be the law today. *Parlapiano v. People,* 176 Colo. 521, 491 P.2d 965, recognized the right of every defendant to obtain testimony presented before a grand jury and approved, in principle, many of the pronouncements made in the *American Bar Association Standards of Criminal Justice Relating to Discovery and Procedure Before Trial.* Crim. P. 16, as presently amended, has also been recognized to have great breadth. *People ex rel. Shinn v. District Court,* 172 Colo. 23, 469 P.2d 732 (1970).

These pronouncements, however, even if applied retrospectively, would not demand relief in this case. The defendant was granted access to the material items of evidence that were in issue to enable expert defense witnesses to testify. *See People v. Watson,* 36 Ill.2d 228, 221 N.E.2d 645 (1966). Demands of a broad nature seeking the production of items that can be only identified by the conclusory statements of defense counsel cannot justify reversal. Prejudice has not been shown, and it cannot be presumed.

VII.

JUDGMENT OF ACQUITTAL

The defendant asserts that the trial court erred in not granting a motion for judgment of acquittal. In a series of decisions, we have set out the tests which are to be used in

determining the merit of such a motion. *Ruark v. People,* 164 Colo. 257, 434 P.2d 124 (1967); *McClendon v. People,* 174 Colo. 7, 481 P.2d 715 (1971); *Nunn v. People,* 177 Colo. 87, 493 P.2d 6.

The machinations of every circumstantial evidence case, in the last analysis, has to be resolved by the jury. The evidence presented to the jury in this case, which we have outlined, establishes beyond a reasonable doubt that the Moellers died as a result of wounds inflicted with a .45 caliber automatic pistol. The defendant admitted that the gun which inflicted the fatal wounds was his, and ballistics tests confirmed his statement. Sergent was in possession of the Moellers' camper that bore irrefutable marks of violence. A bullet retrieved from the camper bore tell-tale marks that identified the bullet as having been fired from Sergent's .45 caliber automatic. Sergent's conduct, together with a myriad of other incriminating circumstances, provide the links that forge a chain which supports the jury verdict and the trial judge's denial of the defendant's motion for judgment of acquittal.

## VIII.
## EVIDENTIARY OBJECTIONS

The evidence presented in this case was largely circumstantial. The defendant did not take the stand and now seeks to reverse because of the testimony of various expert witnesses and the admission of physical evidence that tied him to the scene and the instruments of the crime. He also claims that the chain of evidence was broken when the local law enforcement officers sent various items of physical evidence to the United States Department of Justice for examination. We find the chain of evidence to be intact in every instance. *See White v. People,* 175 Colo. 119, 486 P.2d 4 (1971).

Suffice it to say that we have reviewed all of the other evidentiary claims which the defendant has raised and have found them all to be without merit.

Accordingly, we affirm.

MR. JUSTICE LEE not participating.